## POTTER *Judge vs.* TITCOMB *Adm'r.*

A " brief statement" offered by the defendant, after the pleadings in the case had been closed, was rejected by the Court, though it was subsequent to the passage of the law abolishing special pleading.

The defendant also offered his affidavit that certain notes which constituted the subject of controversy had once been given up to him by the holders thereof, and that they had been taken from him by *accident* with other papers; but it was not admitted by the Court.

Where an action was brought against an administrator on his bond for an alleged breach in neglecting to inventory certain notes of hand given by himself to the intestate, and it appeared, that the notes had lain in the possession of one of the heirs for a period of about thirty years, without his setting up any claim on them, or communicating the fact of their existence to the other heirs, it was held, that these circumstances were a sufficient bar to the recovery of his part of the claim; but that the other heirs were not to be affected by his concealed knowledge, though for certain of them who were minors, he was their guardian.

A verdict in the above case having been returned against the defendant for the penalty of his bond, execution issued directly from the S. J. Court in favor of those heirs for whose benefit the suit had been prosecuted, for the aggregate amount of their respective shares; instead of the whole amount being remitted to the Probate Court for distribution there.

THIS was an action of debt on a probate bond bearing date *Nov.* 28, 1804, in the penal sum of $10,000, commenced under an order of the Judge of Probate for this county; said bond was given by the defendant, on his appointment as administrator on the estate of his late brother, *Moses Titcomb.*

The defendant, after oyer pleaded *first, non est factum*, on which issue was joined.

*Secondly*, a general performance of the condition; to which the plaintiff replied, that the defendant at the time of the death and granting letters of administration to him, was justly indebted to the estate of said *Moses* in divers large sums of money according to the tenor and effect of two several notes of hand, one dated *August* 26, 1799, for $454, payable in two years with interest, and the other dated *August* 10, 1804, for $4450 — payable in three years with interest; of which said sums of money so due from the said *Joseph Titcomb*, to the estate of the said *Moses Titcomb*, he the said *Joseph*, as administrator of the estate

of the said *Moses*, never did render to the Judge of Probate any account, or in any manner charge himself on account therefor. To which the defendant rejoined, that he was not justly indebted at the time of the death of said *Moses*, and granting administration, and tendered an issue to the country, which was joined.

*Thirdly, nil debet*, on which issue was joined.

The *fourth* plea resulted in demurrer, which had been previously determined by the Court. (See 1 *Fairf.* 53.)

*Fifthly*. That on the 28th of *Nov.* 1808, the defendant paid to *Samuel Freeman*, Judge of Probate, &c. all the money mentioned in the penal part of said bond; to which there was a replication, traversing the payment, which resulted in an issue to the country. The defendant offered a brief statement, but *Parris J.* before whom the cause was tried, declined receiving it, at the same time stating that under the issues made up, he would be permitted to avail himself of every thing in defence, which he could offer under his brief statement; and he was so permitted on the trial. The plaintiff offered in evidence the notes mentioned in his replication to the second plea, together with a mortgage executed by the defendant, to secure the payment of the note of the 10*th* of *August*, 1804, and other evidence tending to shew the origin and consideration of the notes, and that they remained due and unpaid at the time of the decease of *Moses Titcomb*, which took place in *September*, 1804, at *Ballstown Springs*, in the State of *New York*. It appeared that the large note was in the possession of *Henry Titcomb*, at the time of *Moses'* death, having been deposited with said *Henry*, as the agent of *Moses*, and that it was found among *Henry's* papers, together with the mortgage, after his decease, by his administrators.

It was contended by the defendant, that the great length of time that had elapsed since these notes were given, raised a presumption in law that they had been paid. On the other hand, it was contended by the plaintiff, that the notes were kept from the knowledge of the other heirs, by *Henry* and the defendant, for their exclusive benefit; and certain facts existing in the case were urged as evidence of this fraudulent arrangement. As the large note and interest would amount to more than the plaintiff could recover in this action, if he prevailed, he gave up his claim upon

the small note, and the Jury were instructed that they might throw that note out of the case. The presiding Judge called the attention of the jury to the fact, that the large note was given but about one month previous to the death of *Moses*, and was not payable under three years, and added, that as the defendant, after his appointment as administrator, was the legal representative of *Moses*, and the only person who had a right to collect the debts due to the estate, and had continued in that capacity, the presumption of payment could not apply, as it would if *Moses* had continued alive, or if another person had been appointed his administrator. But that if the heirs of *Moses*, for whose benefit this action was prosecuted, knew of the notes and suffered them to remain, it would be strong circumstantial evidence that they did not consider them due. That it was incumbent on the heirs to explain it. If they had claims, and they knew it, for their proportion of this property, it was to be presumed that they would enforce their claims; if they omitted to do so, the presumption would be that they had a consciousness of an equitable, if not a legal right against them. That such would be the inference if they knew of the existence of the notes. But that if they were secreted in *Henry's* possession, by contrivance between *Henry* and the defendant, as contended by the plaintiff, and the heirs knew nothing of them, no such inference would arise. He then called the attention of the jury to the evidence of their being secreted, and the evidence of knowledge of the existence of the notes in each of the heirs for whose benefit this action was prosecuted; and upon this branch of the case, concluded by saying to the jury, that if they should find that the heirs all knew of the existence of the notes, and had lain by under this knowledge without claiming any benefit from them, the jury would be justified in presuming from such acquiescence that the notes were not due; and the jury were particularly requested, in writing, to inquire and find whether either of the heirs knew of the existence of the notes, except *Henry*; and if either of the others did so know it, which one; and the jury returned a written answer, that they found that none of the heirs knew of the large note except *Joseph* and *Henry*.

The defendant offered to read to the jury his own affidavit, setting forth the circumstances of his once having possession of

the notes in question, and how they came out of his possession, but the Judge ruled that it was inadmissible.

To shew that the defendant had never accounted for the notes, or either of them, the plaintiff introduced the inventory returned by the defendant as administrator, into the Probate Court; and the defendant thereupon contended, and requested the Judge to instruct the jury, that the inventory thereupon became evidence in favor of the defendant, that the notes not inventoried were not due; which instruction he declined to give.

There was evidence tending to shew that it was not the practice of the Probate Court, at the period of granting letters of administration to the defendant, and long afterwards, to require the inventorying of notes and demands due estates of deceased persons; and that the Judge of Probate had sometimes informed parties applying for information, that it was not necessary so to do. Upon this point, the Court instructed the jury that although this might be morally an excuse for not inventorying the notes, yet it formed no legal excuse to the administrator for not charging himself with them, or accounting for them, in his settlement with the Judge of Probate.

There was evidence in the case tending to prove that the deceased left no children, and that *Henry Titcomb* had received from the widow of the deceased a conveyance of her share of the personal estate, within this jurisdiction, and had given the defendant a receipt therefor; and there was also evidence proving that the said *Henry* was the legal guardian of the representatives of *Eunice Storer*, a deceased sister of *Moses Titcomb*. But the Court did not direct the jury to make any deduction in consequence thereof, or in consequence of the defendant's being one of the heirs of said *Moses*; but did direct them, if they found the several issues for the plaintiff, to assess damages without regard to those facts.

It was contended to the jury, in behalf of the defendant, that it was the intention of *Moses Titcomb*, deceased, to have his personal property in this jurisdiction, particularly what might be in the hands of his brothers and sisters, and owing him from them, disposed of without the forms of legal administration; and that they and their representatives assented thereto.

The presiding Judge instructed the jury, that if all the heirs knew of the existence of these notes, the legal presumption would be that they were settled among the heirs according to the intention of *Moses*, or to their mutual satisfaction; and that if the debts due from the heirs were intended to be settled, without the forms of administration, in any manner, the presumption that they were so settled, applied to all debts known to the heirs; and that if all the heirs, for whose benefit this suit was prosecuted, or persons through whom they claim, knew of the existence of these notes, and assented that the defendant should not include them in the inventory, or charge himself with them, then their verdict should be for the defendant.

The jury found all the issues for the plaintiff, and assessed damages in a sum less than the amount of the large note and interest.

Before the cause was opened to the jury, the defendant moved for leave to withdraw his rejoinder to the plaintiff's replication to his fourth plea, and to rejoin anew, which motion was overruled.

The following summary of the evidence was reported by the Judge, at the request of the defendant, as applicable to the *first* and *second* causes mentioned in his motion for a new trial.

It appeared that on the 3d of *September*, 1799, *Moses Titcomb* appointed his brother *Henry Titcomb*, his attorney, by power under seal, and that the large note of $4450, and the mortgage as collateral security, were taken by *Henry*, in his capacity as agent, and remained with him at the time of *Moses'* death. The small note of $454,04, was deposited with *Andrew Titcomb*, and it did not appear when or how it passed from him into the possession of *Henry*. *Andrew* was the elder brother, and hearing of *Moses'* sickness at *Ballstown Springs*, visited him there; arrived there some time previous to *Moses'* death, and continued there until his death, on which event, he took charge of the portable writing desk containing the papers and letters of the deceased, and brought them to his residence at *Stroudwater* village, where they remained in *Andrew's* possession some weeks, before they were handed over to the administrator. The said *Andrew* called on the *Messrs. Bradbury*, at *Boston*, on his return from

*Ballstown.* They were commission merchants ; had transacted business for the deceased ; and there was at that time, an unsettled account between them, a copy of which was in the case. After the decease of *Moses, Henry* was employed by the heirs as their general agent, to settle the affairs of the estate in the *West Indies,* and with the widow, from whom he received an assignment, which the defendant contended, was with the knowledge of the heirs. The evidence of such knowledge was in letters which were in the case. The defendant, contended that there was evidence of *Moses'* intention to have his estate here, especially dues to him from his brothers, settled and disposed of without the forms of law ; all the evidence bearing upon that point was contained in numerous letters which were referred to in the argument. The defendant settled his first administration account in *Nov.* 1805, and a second account in *Dec.* 1806.

The defendant also moved the Court, that the verdict rendered by the jury should be set aside and a new trial had, for the following causes :

1. Because the said verdict was against the law, and contrary to the direction of the Judge, who tried the same, in matter of law.

2. Because it was without evidence, and against the evidence, and contrary to the legal weight and rules of evidence.

3. Because the defendant offered and requested leave to exhibit and file a brief statement of the special matter of his defence in law and fact, according to the statute, which was refused and rejected by the Judge.

4. Because the defendant offered his affidavit of the fact, that the notes set forth in the plaintiff's pleadings and produced upon the trial, had been delivered up to him by *Andrew Titcomb* and *Henry Titcomb,* two of the heirs in whose hands they had been placed by the directions of the deceased, and presented the same to the Court, in order to call upon the plaintiff and parties prosecuting in the suit, to show when, where, and how, the said notes came into their possession, and to lay the foundation for the legal presumption therefrom in favor of the defendant : but the Judge refused to receive or consider the same.

5. Because the Judge instructed the jury that the burden lay on the defendant, to prove the knowledge and acquaintance of all the heirs of *Moses Titcomb* and representatives of heirs, directly of and with the existence of the said notes, and of the facts necessary to constitute his defence, at the time of the death of said *Moses* and the granting letters of administration.

6. Because it was proved in the case that one of the notes aforesaid was in the knowledge and possession of *Andrew Titcomb*, aforesaid, and the other in the possession of *Henry Titcomb*, aforesaid; and because it was further proved that it was not the practice of the Probate Court, at the period of granting said letters of administration, and long afterwards, to require the inventorying of notes and demands due estates of deceased persons; and that the Judge of Probate used to inform administrators that it was not necessary; and because the defendant had never been requested or cited to inventory or account for said notes, as administrator, and objected that the plaintiff ought not to have and maintain his action thereof against him, by reason of the foregoing, which objection the Judge overruled.

7. Because the plaintiff introduced the inventory exhibited by the defendant as administrator, under oath, to the Judge of Probate, of all the goods, chattels, effects and credits of the deceased, which had come to his hands, possession or knowledge, or into the hands or possession of any other person for him, and requested the Judge to instruct the jury, that the same was evidence for the defendant of the truth thereof, which instructions the Judge declined to give.

8. Because it was proved, as aforesaid, that one of the notes was in the knowledge and possession of *Andrew Titcomb*, aforesaid, ancestor of certain representatives, for whose benefit this suit was prosecuted, and no certain or definite direction was given by the Judge to the jury, in respect thereto; and because the finding and verdict of the jury is uncertain respecting the same; and because it is uncertain whether the said note is not included in the amount for which the jury rendered their verdict.

9. Because the jury have undertaken in their verdict, to assess the damages in this case, as by law they are not authorised to do.

10. Because the Judge directed the jury to assess damages for the plaintiff, if they found their verdict in his favor, and further directed the jury to render the same for the whole amount of such note or notes with interest, not exceeding the penalty of the bond and interest from the date of the writ, in which instructions there was error and misdirection.

11. Because the defendant proved that one half of the personal estate of said deceased in this jurisdiction, was the property of *Henry Titcomb*, aforesaid, by purchase thereof, with the assent of the heirs, and the said *Henry* had discharged the defendant from all demands, and the Judge did not direct the jury to deduct one half of the amount of said notes from the damages on account thereof.

12. Because it was proved that said *Henry Titcomb* had possession of the larger note and discharged the defendant from all demands and the Judge did not instruct the jury to deduct the proportion accruing to said *Henry*, as one of the heirs of said deceased.

13. Because it was further proved that said *Henry Titcomb* was legal guardian of the representatives of *Eunice Storer*, a deceased sister of the deceased, namely *George L.*, *Charles*, *Elizabeth*, and *Mary Ann*, and had likewise discharged their claims; and the Judge did not direct the jury to deduct their proportion from the amount of damages.

14. Because the Judge did not direct the jury to deduct such proportion of said notes or debt as belonged to the defendant, who was coheir to the deceased.

15. Because the Judge did not instruct the jury to deduct the proportion of *Elizabeth Harris*, it being proved that her husband, *John Harris*, who was entitled to the same, had received an amount of said deceased's estate fully equal thereto, and had never accounted therefor in any other manner.

16. Because it was the intention of *Moses Titcomb*, deceased, as appeared by evidence, to have his personal property in this jurisdiction, particularly what might be in the hands of his brothers and sisters, and owing him from them, disposed of without the forms of legal administration, and they and their representatives assented thereto. And because it appeared that the parties

aforesaid, for whose benefit this suit was prosecuted, are heirs at law and representatives of brothers and sisters of *Henry Titcomb*, from whom they inherit and have received their parts of an estate of forty thousand dollars, and because they were and are privies to the said *Henry Titcomb*, who held said note and discharged this defendant from all demands and because they never called his acts therein in question during his lifetime, they having full means and opportunity of knowledge, enquiry and information in relation to the premises; and the said *Benjamin Titcomb* and *Luther Fitch*, in particular, are his administrators, and they ought now to be precluded in law and equity from making and maintaining any further claims thereon; and upon the evidence thereof before the jury, and the instruction of the Court thereon, their verdict ought to have been for the defendant.

*N. Emery, Longfellow*, and *Daveis*, for the defendant, argued at great length in support of the positions taken by them at the trial, principally relying however upon the 1st and 2d points under the motion at common law.

As to the *legal presumptions* in favor of the defendant, arising from lapse of time, they cited *Co. Inst. p.* 232 *b.*; *Bridges* v. *Chandler*, 2 *Bur.* 1073; *Gray* v. *Gardiner*, 3 *Mass.* 399; *Jennison* v. *Hapgood*, 7 *Pick.* 18; *Roscoe's Ev.* 41; *Monk* v. *Butler*, 1 *Rolles*, 89; *Ld. Halifax's* case, *Bul. N. P.* 298.

And that the presumption was, if *one* of the heirs knew of the existence of the notes, they *all* knew it, they cited, *Parker* v. *Merrill*, 6 *Greenl.* 43; *Carey* v. *Shephard*, 11 *Pick.* 400; *Rex* v. *Harding*, 11 *East*, 588; *Bell* v. *Ansley*, 16 *East*, 143; 2 *Maddox*, 326; 3 *Melody*, 222.

That the defendant was entitled to his brief statement, *Potter* v. *Sturdivant*, 4 *Greenl.* 154.

That the affidavit also of the defendant should have been admitted, to prove the loss of the notes from his possession, *Poignard* v. *Smith*, 8 *Pick.* 278.

*Fessenden* and *Deblois*, for the plaintiff.

At the term holden in this county by adjournment in *August* following, the opinion of the Court was delivered by

WESTON J. — The counsel for the defendant has moved the Court for leave to withdraw his rejoinder to the replication to his

fourth plea; and for leave to rejoin anew. That set of pleadings has twice resulted in joinder on demurrer. The judgment of the Court has been given, after repeated and solemn arguments. When the opinion of the Court had been pronounced upon the pleadings as they first stood, leave was given to amend, after which, to the plaintiff's surrejoinder, the defendant demurred specially, and the plaintiff joined in demurrer. After argument, the demurrer was again decided. The cause having been greatly protracted, and the most ample opportunity afforded on both sides for deliberation, the claims of justice do not, in our judgment, require that the pleadings should be again opened. The defendant's motion is accordingly overruled.

All the issues to the country, have been found in favor of the plaintiff. The defendant moves that the verdict may be set aside, and a new trial granted; upon various grounds, set forth in his motion. A brief statement was offered by the defendant, under the act of 1831, *ch.* 514, to abolish special pleading, which was rejected, and we think properly, by the Judge, who presided at the trial. The pleadings upon these issues had closed, before the passage of that law. That permitted no other plea than the general issue; here the defendant had the benefit of four other pleas; and was besides permitted by the Judge to give in evidence every thing, set forth in his brief statement.

The defendant's affidavit was very clearly not competent evidence of the facts therein detailed; and could not have been legally received.

The jury have found that none of the heirs, for whose benefit this suit was brought, except *Henry Titcomb,* deceased, who is represented by his administrators, knew of the existence of the notes in controversy. We cannot regard the other heirs as affected by the knowledge which *Henry* had and concealed. Nor do we think that his knowledge and unfaithful acquiescence, in his character as guardian, can or ought to conclude his wards.

The verdict is objected to as against evidence, or against the weight of evidence. We have examined it with care; and do not feel ourselves called upon, in the exercise of a sound discretion, to disturb the verdict on this ground. Two juries, to whom the case has been submitted, have come substantially to the same result.

Potter v. Titcomb.

The law of *Massachusetts*, in force when the bond was given, clearly made it the duty of the administrator, within three months, to cause an inventory to be made of the estate of the deceased. And by the condition of the bond, it was to be a true and perfect inventory of all and singular the goods, chattels, rights and credits of the deceased, which have or shall come to the hands, possession, or knowledge of the administrator. The Judge of Probate had no power to dispense with this duty. His authority was limited by law; and the bond was for the security of all persons interested in the estate. No citation in the Probate Court was necessary, as this Court has holden in this case, to render the administrator liable upon his bond, for not returning a true and perfect inventory.

The plaintiff had proved that certain credits of the deceased, within the knowledge of the defendant, existed when the inventory was made, and that they were omitted therein, notwithstanding which, the Judge was requested to instruct the jury that the inventory returned, verified by the oath of the administrator, was evidence that it contained all the goods, effects, and credits of the deceased, which had come to his knowledge. The burthen of proof was on the plaintiff, to show the inventory defective; but that being shown, there was nothing in the inventory to justify the omission, or which would amount to repelling proof. The inventory, coupled with the proof, became evidence that that duty had been omitted, not that it had been performed.

With regard to the eighth ground of the defendant's motion, the small note was waived by the plaintiff at the trial, and the jury were instructed to throw that out of the case. And as to the ninth, the statute of 1830, *ch.* 463, does make it the duty of the jury to assess the damages in these cases; and because this was not done at a former trial, the verdict was set aside. *Potter* v. *Titcomb,* 7 *Greenl.* 334.

The note allowed by the jury, against the defendant, was on interest by its terms; and he was in our opinion rightfully chargeable therewith, not exceeding the penalty of the bond.

It is objected, for reasons set forth in the motion, that the jury should not have awarded the whole sum against the defendant, but that they should have deducted from their verdict the defend-

ant's own proportion, as heir of part of the fund, the widow's share, which was one half, there being no children, and the proportions of certain of the other heirs. On the part of the plaintiff, it is insisted that he ought to have execution for the whole sum, to be distributed in the Probate office according to law; and as the rights of the parties may be there made to appear. We do not find, that by law, the Judge is any where made the trustee or holder of moneys belonging to an estate, of which he has jurisdiction, in due course of administration. It would impose upon him an onerous and unnecessary duty. If any such had been contemplated, he would doubtless have been holden to give bonds, which is uniformly required of public officers, who receive money in trust for others. The Judge of Probate is merely nominal in the suit. The act to regulate the jurisdiction and proceedings of the Courts of Probate, revised laws, *ch.* 51, *sec.* 71, provides that in all suits, brought in the name of any Judge of Probate upon a Probate bond, the writ, in addition to the usual indorsement of the name of the plaintiff or his attorney, shall also have the name of the person or persons, for whose particular use and benefit the suit is brought, written thereon. The money is recovered for their use, and not for the Judge; and we can only award execution, so far as they are interested in a failure of duty, on the part of the administrator. If others have suffered, they cannot participate in the remedy, but it must be limited to those, for whose particular use the suit is brought.

By the 72d section of the same law, it is provided, that where any administrator shall have received the personal property of an intestate, and shall not have exhibited upon oath, a particular inventory thereof, which is the case before us, execution shall be awarded against him for such a part of the penalty of his administration bond, as the Supreme Court of Probate shall, on full consideration of all the circumstances of the case, judge reasonable; to be distributed among the parties interested, agreeably to the directions of law. The fruit of the remedy is not a decree or adjudication of the Supreme Court, that the administrator perform the neglected duty, and account in the Probate office; but he is at once made liable to an execution, not exceeding the amount of the penalty, by way of indemnity to the party injured;

Potter v. Titcomb.

and beyond this, he cannot be made chargeable upon the bond. There is no reason why the parties, for whom the suit is brought, should await further proceedings in the Probate office. What the administrator is to pay, the Supreme Court determine; and the amount is not subject to the revision of the Judge of Probate. The provision for a distribution of the amount awarded, is in the same sentence, which authorises the award, and must be intended to form a part of it. There is certainly nothing in the section, which can justify the position, that the distribution is to be made by another Court. Certain of the heirs, or their representatives, caused this suit to be brought. The fund is not wanted by creditors. They have been paid, or their claims have been long since barred. The jury have settled the whole amount of damage, arising from the omission in the inventory. From this it is easy to settle the proportions, to which the heirs are respectively entitled.

We are well satisfied that the administrators of *Henry Titcomb* are not entitled to any part of the fund, either as he was one of the heirs of the deceased, or as assignee of the moiety belonging to the widow. He must be understood to have discharged the administrator, with a full knowledge of all the facts. The verdict cannot be permitted to operate in his favor; and as his administrators would be entitled to recover his proportion, upon the verdict as it stands, it must be set aside, unless the administrators of *Henry Titcomb* will release to the defendant all their claim to any portion of the fund, in behalf of their intestate, as heir or assignee. This being done, we sustain the ruling of the Judge at the trial, and overrule the objections made to the verdict. The heirs are entitled to one half the fund. Their proportions are settled by the law, providing for the distribution of intestate estates, and judgment is to be entered in favor of each of the heirs, for whom the suit is brought, except the representatives of *Henry Titcomb*, deceased, for their respective proportions thus ascertained, of the one half of the amount of the verdict. The aggregate of these proportions, with the exception aforesaid, is the amount for which execution is to be awarded against the defendant.

*Judgment accordingly.*